## HILGEMEIER *v.* BOWER MANUFACTURING COMPANY.

[No. 11,572. Filed June 5, 1923. Rehearing denied November 15, 1923. Transfer denied February 29, 1924.]

1. BILLS AND NOTES.—*Indorsements.—Consideration For.*—In an action on a promissory note, in which the makers and original indorsers filed cross-complaints against indorsers after the note was executed, it was incumbent on the cross-complainants to allege and prove facts showing an independent consideration to support said indorsements, separate and distinct from the consideration for the note. p. 193.

2. BILLS AND NOTES.—*Indorsements.—Subsequent to Execution. —Consideration.*—Where the promoters of a projected corporation, in order to carry out their common enterprise entered into an agreement to purchase the business and assets of another corporation, such business and assets to be turned over to the new corporation when organized, and, as a part of the purchase price, assumed and agreed to pay the liabilities of the selling corporation, and thereafter, to secure the performance of said agreement, indorsed a note of the corporation whose business was being purchased, a sufficient consideration is shown for their indorsements. p. 198.

3. CORPORATIONS.—*Promoters.—Liabilities.*—Promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract, and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed. p. 198.

4. CORPORATIONS.— *Promoters.— Liabilities.— Evidence. — Sufficiency.*—Evidence *held* sufficient to authorize a finding that promoters, officers and directors of a corporation were liable on their indorsements of the note of another corporation, whose business they purchased and turned over to their corporation, although such indorsements were made after the execution of the note but before maturity, as a means of securing the performance of a contract made by them with the other corporation to purchase its assets and business, and, as a part of the purchase price, to pay the debts and liabilities of the selling corporation, and such indorsements were made in order to secure an extension of time to make such payment. p. 198.

5. BILLS AND NOTES.—*Negotiable Instruments Act.—Indorsers. —Liability.*—Section 24 of the Negotiable Instruments Act (Acts 1913 p. 120, §9089x Burns 1914) provides that every

person whose signature appears on a negotiable instrument is deemed *prima facie* to have become a party thereto for value, and indorsements on a promissory note, therefore, are presumed to be for a valuable consideration.   p. 198.

6.  EVIDENCE.—*Written Excludes Parol.—Application.*—The rule excluding parol evidence to vary or contradict a written instrument applies only to controversies between the parties to the instrument and those claiming under them.   p. 201.

7.  EVIDENCE.—*Written Excludes Parol.—Exceptions to Rule.*— The rule that previous oral negotiations are merged in a written contract does not exclude proof of collateral independent parol agreements between the parties which were acted upon prior to the time of the writing, nor parol evidence of subsequent agreements.   p. 201.

8.  EVIDENCE.—*Written Excludes Parol.—Ambiguity in Written Contract.*—Where the language of a written contract is vague or ambiguous, parol evidence is admissible to make plain the meaning or intention of the parties.   p. 201.

9.  EVIDENCE.—*Parol Evidence of Prior Negotiations.—Admissibility.*—Where a written contract provided for the purchase by one corporation of the business and assets of another, and, as a part of the purchase price, the payment of all the indebtedness of the latter, and, pursuant to prior oral negotiations, the officers and promoters of the purchasing corporation indorsed a note which, prior thereto, had been executed for part of such indebtedness, parol evidence is admissible to show the facts and circumstances of the indorsements and to furnish evidence of a consideration therefor.   p. 203.

10.  APPEAL.—*Instructions.—Harmless Error.*—Where the verdict is right on the evidence, an erroneous instruction is not cause for reversal.   p. 203.

From Warren Circuit Court; *Henry H. Vinton,* Special Judge.

Action by Lemuel Shipman against the Bower Manufacturing Company and others.  From a judgment for plaintiff and cross-complainants against some of the defendants, the latter appeal.  *Affirmed.*

*Jones & Lairy, Joseph E. Bell, Walter Myers* and *Ralston, Gates, Lairy, VanNuys & Barnard,* for appellants.

*William S. Isham, Donald Fraser, Will Isham, Elmore Barce* and *Harley D. Billings,* for appellees.

NICHOLS, C. J.—This action was by appellee Lemuel Shipman based on a promissory note to his order for the sum of $5,000, dated January 18, 1920, and due one year after date.

The note, at the time of its execution and delivery, was signed, on its face, by the Bower Manufacturing Company, and endorsed on the back by Frank Bower and John Bower; thereafter, and before the maturity of said note, it was endorsed, on the back, by the Van Briggle Manufacturing Company, by L. H. Van Briggle, president, and by appellants Van Briggle, Rominger, Hilgemeier and Wiley, personally.

The errors presented are the court's action in overruling appellants' motion for a new trial and in overruling their motion for judgment on the jury's answers to interrogatories. The substantial controversy which arose at the trial and which is presented on appeal pertains to the evidence offered by appellees to prove a consideration for the indorsements of appellants. The pleadings filed on behalf of appellees all disclose that such indorsements of the note by appellants were not made at the time of the execution and delivery of the note but that they were made after its execution and delivery and before its maturity. It thus appears that the loan, which constituted the consideration for the execution and delivery of the note, would not constitute a consideration for such subsequent indorsements by appellants. It was, therefore, incumbent upon appellees to allege facts showing an independent consideration to support said indorsements, separate and distinct from the loan; and, having alleged such facts, it then became necessary for appellees to prove them, as alleged, before they were entitled to a finding and judgment in their favor.

Appellants contend that there was no consideration

for their indorsements, and further that the evidence of appellees, in so far as it was offered to prove a consideration therefor, must be limited and confined to the facts alleged in the pleadings as constituting such consideration, and that no facts could be proved the effect of which would be to establish any consideration other or different from that alleged. Appellees contend that ample consideration was averred and that the evidence was within the pleadings.

The effect of a certain written contract entered into between the Bower Manufacturing Company and the Van Briggle Manufacturing Company, executed July 17, 1920, and by agreement dated as of March 4, 1920, and as to whether, because of such contract, parol evidence of the consideration for the indorsements was admissible, is involved. This contract recited that the Bower Manufacturing Company was organized for the purpose of manufacturing and selling "Bower's adjustable auto trailer", under a patent issued to Frank Bower, who had been engaged in the manufacture of said trailer in the town of Fowler, Indiana; that at a special meeting of the stockholders of said company, there was submitted a proposition from appellant Van Briggle, representing a syndicate of capitalists of Indianapolis, Indiana, to purchase and take over the business of the Bower Company, and all of its property, both real and personal; that the proposition was accepted and the board of directors was authorized to enter into a contract with said L. H. Van Briggle, or the company to be organized, for the purpose of taking over said business; that appellant Van Briggle and his associates had organized the "Van Briggle Manufacturing Company" with a capitalization of $1,000,000 to take over the business, property and assets of the Bower Company, that the Van Briggle Company was ready, able and willing to carry out the terms and conditions of the proposition

of said Van Briggle, and to purchase and take over the business and property and assets of the Bower Company.

Following these recitals, the contract contains the agreement of the parties so far as here involved: That the Bower Company should sell, transfer, assign and convey to the Van Briggle Company all of its property, both real and personal, upon the following terms and conditions, with other considerations, to wit: It should have prepared and duly executed, as soon as possible, a bill of sale of its personal property and cause to be prepared and executed, a sufficient warranty deed, conveying all of its real estate to the Van Briggle Company so as to pass the title and possession of all of the same. In consideration of the Bower Company selling, transferring and conveying to the Van Briggle Company all of its property, both real and personal. The Van Briggle Company agreed and assumed to pay all of the outstanding indebtedness of the Bower Company and to save it and its endorsers harmless from any liability on account thereof.

The consideration for the sale of the property by the Bower Company to the Van Briggle Company so far as it relates to the payment of the debts of the company first named, was, as eventually stated in the contract, that the last-named company should assume and pay all of the debts and hold and save the first-named company and its indorsers harmless from any liability for the payment of said debts. The details of such consideration, and the manner of saving the Bower Company and its indorsers harmless is in controversy.

Appellants contend that the legal effect of the provision stated was to obligate the Van Briggle Company to pay such debts as and when they became due and not before; that the written contract merged all prior negotiations of the parties and became the sole reposi-

tory of the terms of the agreement; that no other evidence was admissible to prove any of its terms; while appellees contend that the original agreement for the sale of the property, together with its subsequent modification to meet conditions arising as averred in the pleadings, was in parol, and, with other things, the original agreement required the payment of the debts to be in cash. In this regard, it is well to keep in mind that though the written contract was dated March 4, 1920, it was not in fact executed until July 17, 1920, long after appellants indorsed the note. The agreement leading up to such endorsements was, therefore, in parol.

Over the objections of appellants, the court permitted appellees to prove the agreement by the parol testimony of witnesses.

It is averred in the complaint as to the consideration: "That as purchase money for said property sold and delivered, by said Bower Manufacturing Company, and had and received by said Van Briggle Company, the said Van Briggle Company promised and agreed, among other things, to pay and discharge said note and the debt evidenced and secured thereby according to its tenor and effect, and to hold and save harmless therefrom the said Bower Company and the said Frank Bower and John Bower. And for and in consideration of said property so sold and delivered, and for the benefit of the plaintiff, and the said Bower Company, Frank Bower and John Bower, the original makers of said note, said Van Briggle Company, at the request and with the consent of the original makers, and for the benefit of the plaintiff, signed said note as therein and procured the defendants Henry S. Rominger, Frank Hilgemeier, L. Howard Van Briggle and Ulric Z. Wiley, as makers to sign said note with it as therein."

The allegations in the first paragraph of cross-com-

plaint of appellees Frank Bower and John Bower are: "That afterward, and before the maturity of said note, and while said note remained in full force and effect and unpaid, the cross-defendant Van Briggle Manufacturing Company and the cross-defendants L. Howard Van Briggle, Henry S. Rominger, Frank Hilgemeier and Ulric Z. Wiley purchased a large amount of property (here involved) * * * and said Van Briggle Manufacturing Company and cross-defendants Van Briggle, Rominger, Hilgemeier and Wiley took possession of said property so sold, and promised and agreed to pay to said Bower Manufacturing Company a large sum of money and more than five thousand dollars for and in consideration of property sold and delivered by said Bower Manufacturing Company to said Van Briggle Manufacturing Company and said last named individual cross-defendants," and, as to the consideration, the allegations are "that, each and singular, said Van Briggle Company, and said cross-defendants Van Briggle, Rominger, Hilgemeier and Wiley agreed, as a part of the purchase money for said property, to pay and discharge said note sued on in the complaint according to its tenor and effect and to become principal debtors to the plaintiff on account of said note and to hold and save harmless said Bower Company, and said cross-complainants Frank Bower and John Bower. That afterward, before the maturity of said note, the said Van Briggle Company became, in pursuance to said agreement, maker of said note by signing its name below the names of said Frank and John Bower, and the said cross-defendants Van Briggle, Rominger, Hilgemeier and Wiley, in consideration of their several indebtedness to said Bower Company and in consideration of the unpaid purchase price of said property, became, in pursuance of said agreement, makers of said note sued upon."

The second paragraph of cross-complaint, after averring that "said Van Briggle, Rominger, Hilgemeier and Wiley acting together in a common enterprise for the manufacture of said trailer cars, about March 4, 1920, entered into negotiations with said Bower Company for its property, looking to taking over the same by themselves in their common enterprise as aforesaid, and for the subsequent use and benefit of a manufacturing company to be organized by them * * * and all things, belonging or appertaining to said Bower Company," then avers the execution of the written contract of sale, and that, as a part of the consideration for such sale, appellants agreed to pay the note sued on, the taking possession of the property purchased and the subsequent organization of the Van Briggle Company. It then avers: "That the said Van Briggle Company, although it gave out that it had a million dollars capital, found that it was undesirable, or temporarily inconvenient, to so marshal its resources as that, when it took over said property, it could pay and discharge said note, and applied to and received from said Bower Company a temporary postponement of the payment of the debt sued upon and the other debts of said Bower Company." And "inasmuch, as the resources of the Bower Company were impaired to the extent that its property was originally taken over by said cross-defendants Van Briggle, Rominger, Hilgemeier and Wiley, the payee of said note and the cross-complainants demanded that said note should be further secured, and to that end, the payee of said note and the cross-complainants demanded and required that said Van Briggle Company and said Van Briggle, Rominger, Hilgemeier and Wiley should sign some writing obligatory to bind and oblige them and each of them to pay and discharge said note. And the cross-complainants aver and charge that to carry out the agree-

ment originally made to pay the debts of said Bower Company by the said Van Briggle, Rominger, Hilgemeier and Wiley, and to insure the further promise of the Van Briggle Company and its said promoters to pay said debt, which promise the cross-complainants aver was made for their benefit as well as for the benefit of the payee, the said Van Briggle Company, and said Van Briggle, Hilgemeier, Rominger and Wiley, about April 7, 1920, signed said note as their respective names appear thereon." These averments, which are substantiated by the evidence (except as to the time when the written contract was executed and as to when possession was taken), are sufficient to show a consideration for the indorsement by appellants of the note in suit. From the evidence as a whole, it appears, as specifically averred in the second paragraph of cross-complaint and with less certainty in the first paragraph, that appellants were jointly engaged in a common enterprise of promoting the Van Briggle Company, and that the purchase of the property here involved by them was for the use of that company thereafter to be organized. Under such circumstances, they were liable on their contract of purchase. This principle is stated in 14 C. J. p. 269, §312, as follows: "Of course promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract; and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed." Numerous authorities are cited to sustain the rule. By their contract made as promoters, they agreed, as a part of the purchase price of the property to be used by their corporation when organized, that they would pay the debts of the Bower Company, and

save it and its indorsers harmless. This not only appears by the written memorandum subsequently made of the contract, but as well by oral testimony of the original agreement to pay cash for the property, made by Van Briggle, one of the joint promoters, and the subsequent agreement when the time was extended that, in lieu of payment in cash, the notes should be indorsed by appellants, which agreement was confirmed by their indorsement. Section 9089x Burns 1914, Acts 1913 p. 120, being §24 of the Negotiable Instruments Act, provides that every person whose signature appears on a negotiable instrument is deemed *prima facie* to have become a party thereto for value. Under this statutory rule, had there been no evidence as to the consideration for appellants' indorsement, there was still a presumption that the indorsement was for a valuable consideration. As said in *Sangster* v. *Bricker* (1918), 66 Ind. App. 409, 118 N. E. 383, "It is taken for granted that some kind of liability was intended." The evidence in this case that appellants had not signed for value, and that they did not intend some liability, is meager indeed. It appears by the jury's answers to interrogatories, and there is evidence to sustain these answers, that the Van Briggle Company did not take possession of the property involved under the contract of March 4, 1920, until April 6 or 7, 1920, and that the Van Briggle Company then acquired such possession by indorsing its name on the note, and that appellants, by their indorsements, assisted the Van Briggle Company in acquiring the same. The deed for the real property, and the bill of sale for the personal property were not executed and delivered until after these indorsements. It appears by the evidence that Van Briggle was not to have possession of the property until it was settled for, but that appellee Frank Bower said to Van Briggle, "If you want to go ahead and put men in here and

try out and see what you can do, all right," and that, pursuant to this permission, possession was taken. Said Bower, however, continued in his place of business as manager. Such possession, therefore, was for the purpose of a test and not under the contract. It is uncontradicted that immediately before appellants placed their names on the note in suit, there was a controversy between the parties as to the payment of the note in suit, and others, and appellees Bower were objecting to further operations and control of the property involved until they were saved harmless. Their protest was accompanied with threats of violence. To satisfy them, it was agreed that appellants should indorse the note, and after this was done, the Van Briggle Company was permitted to proceed with its control and operation of the property. To say that appellants understood at the time that their indorsements were a mere matter of form, and that they understood that they thereby assumed no legal obligation to appellees, would be to charge them with fraudulently attempting to deceive appellees. We do not need to assume this responsibility.

Appellants' contention that evidence of negotiations and oral agreements between the parties cannot be heard because of the written contract, which, as 6-8. appellants contend, embodies all of the terms of their agreement, cannot prevail. Even if the parol evidence were contradictory of the terms of the written contract, appellees Bower and appellants were not parties thereto, nor are their rights necessarily determined thereby, but rather by the oral agreements made long before the written agreement was executed. The rule excluding parol evidence to vary or contradict a written instrument applies only to controversies between the parties to the instrument and those claiming under them. *Burns* v. *Thompson* (1883), 91 Ind. 146.

It is admitted that the written contract, though dated March 4, 1920, was not executed until July 17, 1920, long after the original oral agreement and oral agreement subsequent thereto and the resulting indorsements were made. The general proposition that the contract having been reduced to writing, previous oral negotiations are merged therein, and that the terms of the agreement cannot be made to appear otherwise than by the writing, is well settled, but it does not prevent proof of collateral independent parol agreements between the parties which were acted upon prior to the time of the writing. See *Moore, Admr.*, v. *Harrison, Admr.* (1901), 26 Ind. App. 408, 59 N. E. 1077; *Equitable Trust Co.* v. *Milligan* (1903), 31 Ind. App. 20, 65 N. E. 1044; 16 C. J. 713. Even if the written contract had been effective as of March 4, 1920, parol evidence of the subsequent agreement of April 7, 1920, could be heard. *Toledo, etc., R. Co.* v. *Levy* (1891), 127 Ind. 168, 26 N. E. 773. While the written contract provided that the outstanding indebtedness should be paid and appellee Bower Company and its indorsers should be saved harmless from liability on account thereof, it does not designate the manner in which this end should be accomplished. Where the language is vague or ambiguous, parol evidence may be heard, not to add to or detract from the written instrument, but to make plain the meaning or intention of the parties. *Harris* v. *Doe* (1837), 4 Blackf. 369; *Mace, Exrx.*, v. *Jackson* (1871), 38 Ind. 162; *Burton, Rec.*, v. *Morrow* (1892), 133 Ind. 221, 32 N. E. 921; *Marion School Twp.* v. *Carpenter* (1895), 12 Ind. App. 191, 39 N. E. 878; *Thomas* v. *Troxel* (1901), 26 Ind. App. 322, 59 N. E. 683; *Singer Mfg. Co.* v. *Forsyth* (1886), 108 Ind. 334, 9 N. E. 372; *Cravens* v. *Eagle Cotton Mills Co.* (1889), 120 Ind. 6, 21 N. E. 981, 16 Am. St. 298; *Sangster* v. *Bricker, supra.*

The written agreement made more than three months after appellants had indorsed the note in suit can have no influence in determining the effect of the indorsements, unless it may be said that it was some expression of the intention of the parties, and, as to this, it does not contradict the intention as expressed by the oral agreements which afforded consideration for the indorsements. The oral testimony was within the issues.

9.

The jury's answers to interrogatories submitted to them do not control their general verdict for appellees. Rather, they are confirmatory thereof.

We have examined the instructions given and find no substantial error therein, but even if there were error, if the verdict is right upon the evidence, an erroneous instruction is not cause for a reversal. It may be, as stated by counsel in oral argument, that some of the appellants are victims of the fraudulent conduct of others, and that such are suffering hardship, but, as between appellants and appellees, we are satisfied that a right result has been reached.

10.

Judgment affirmed.

Enloe, P. J., dissents.